APPROVED FINANCE CO., *ET AL.*, PLAINTIFFS-APPEL-
LANTS, v. RICHARD F. SCHAUB *ET AL.*, DEFENDANT-
RESPONDENT, AND MAJESTIC FINANCE & DISCOUNT
CORP., *ET AL.*, PLAINTIFFS-APPELLANTS, v. RICHARD
F. SCHAUB *ET AL.*, DEFENDANT-RESPONDENT.

Argued March 22, 1977—Decided May 12, 1977.

*Mr. Steven S. Radin* and *Mr. Robert S. Fisher* argued
the cause for appellants Majestic Finance & Discount Corp.,
et al. (*Messrs. Sills, Beck, Cummis, Radin & Tischman,*
attorneys; *Mr. Gerald Span* on the brief).

*Mr. Harvey L. Weiss* argued the cause for appellants
Approved Finance Co., et al. (*Messrs. Stern & Weiss,* at-
torneys).

*Mr. Michael E. Goldman,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

PER CURIAM. These consolidated appeals are here on our certification to the Appellate Division, 70 *N. J.* 273 (1976), of a judgment declaring the validity of certain regulations promulgated by the defendant Commissioner of the Department of Banking, under and pursuant to the Secondary Mortgage Loan Act, *N. J. S. A.* 17:11A–34 *et seq.* The nature of the proceedings culminating in this appeal, the text of the regulations under attack and the grounds of plaintiffs' objections to them are set forth in the *per curiam* opinion of the Appellate Division. 137 *N. J. Super.* 325.

On the submission of the appeals to the Appellate Division both sets of plaintiffs limited their contentions to assertions of the facial invalidity of the regulations. The plaintiffs in the Approved Finance Co. case, however, also sought an injunction against enforcement of the regulations pending factual findings as to their applicability to the kind of transactions which the plaintiff loan companies were conducting with certain banks. Moreover, the arguments of both sets of plaintiffs as briefed contain what may be regarded as alternative contentions that if the regulations are valid they are not, or should not properly be deemed, applicable to the kinds of dealings in second mortgage paper being conducted between plaintiff loan companies and plaintiff banks.

The general purpose of the regulations in question is to amplify the statutory specification of the following conduct, prohibited by *N. J. S. A.* 17:11A–46(k):

solicit business, directly or indirectly, for any other licensee, lender, retail seller of personal property or services or for any other person. whether in this or any other state.

The key regulation in question. *N. J. A. C.* 3:18–6.2 reads:

The following words and terms, when used in this Subchapter shall have the following meanings unless the context clearly indicates otherwise.

"Lender" means and includes a secondary mortgage loan licensee or any in or out-of-State bank or other financial institution which, *by prior agreement and in the normal course of business,* acquires individual secondary mortgage loans which have been solicited by a licensee.

"Solicit" means and includes any and all types of advertising or any other form of communication with prospective borrowers which results in the origination of secondary mortgage loans in the name of a licensee *which, by prior agreement and in the normal course of business,* are subsequently negotiated to a lender.

(emphasis added).

The regulation purports to amplify the meaning of the words "solicit business" and "lender" in *N. J. S. A.* 17: 11A–46 (k).

Regulation *N. J. A. C.* 3:18–6.1 is unobjectionable, being essentially a restatement of the statutory prohibition of soliciting loans for other lenders. Section 17:11A–46(k). Nor is there any objection to Regulation *N. J. A. C.* 3:18–6.3.[1]

When considered against the background of the affidavits in the record describing the kinds of business transactions customarily carried on between plaintiff loan companies and plaintiff (or other) banks, regulation 3:18–6.2 appears to us so ambiguous as to justify the contention of the Approved Finance Co. group of plaintiffs that it is too vague for enforcement in its present form. The verbiage, "by prior agreement," on ordinary reading suggests a prior valid contract by which the parties have bound themselves, one to transfer and the other to accept a mortgage chose in action previously created by the licensee by a loan to a borrower. While the Attorney General does not indicate whether defendant intends the regulation to be so confined in effect, it may be

---

[1] This provides an exemption from *N. J. A. C.* 3:18–6.1 in the case of bulk assignments of secondary mortgage loans as collateral security for a commercial loan.

suspected from his failure flatly to deny its applicability to the operations of plaintiffs as described in their affidavits that he deems them covered thereby.

The arrangements between plaintiff brokers and plaintiff banks do not, however, appear to involve binding agreements. They seem, by and large, to constitute merely ongoing, habitual series of negotiations and dealings wherein licensee-lenders submit portfolios of new second mortgage loans to banks and the latter purchase such of the loans as they choose, after credit checks of the borrowers, the licensee guaranteeing payment of the account and the parties dividing the 15% interest on the loan between them on an agreed basis. Nevertheless, for all we can be sure from this record, there may well exist in the market-place types of dealings in second mortgage loans involving binding contractual agreements by licensees to negotiate and transfer such loans to banks, executed on a regular and continuous basis. We have no hesitation in declaring that a regulation clearly forbidding such a practice would be valid and free from objection on any of the grounds advanced by plaintiffs — and this for the reasons set forth in the Appellate Division opinion. Such practices would plainly invoke the strong public policy against secondary mortgage solicitors acting as brokers for lenders which has, in part, motivated both the prior (*L.* 1965, *c.* 91) and current secondary mortgage loan acts. See *Oxford Consumer Dis. Co. of No. Phila. v. Stefanelli,* 102 *N. J. Super.* 549, 554–555 (App. Div.) supp. 104 *N. J. Super.* 512 (App. Div. 1968), mod. 55 *N. J.* 489, appeal dismissed, 400 *U. S.* 923, 91 *S. Ct.* 183, 27 *L. Ed.* 2d 182 (1970). In this regard we are clear that it makes no difference whether the transferee is another loan company or a bank.

We are less confident of the answer in the case of transactions like those described in plaintiffs' affidavits. Whether such arrangements constitute the soliciting of business, directly or indirectly, by the licensee loan company, for the lender bank, as envisaged by Section 17:11A–46 (k), or

whether prohibiting such transactions would improperly circumscribe the activities of banks under other legislation, are questions which should not be put to the courts in the absence of a clear formulation by the Commissioner of Banking of a regulation specifying exactly what he is proscribing. Moreover, the plaintiffs and the general public should not have to guess at the meaning of the regulation, at their peril. The cause will be remanded to the Commissioner of Banking to enable him to revise the regulation in question toward the end indicated hereinabove. If the statutory process for revision of the regulation, see *N. J. S. A.* 52:14B-4, is not begun within 45 days and expeditiously brought to conclusion thereafter, plaintiffs may apply to this Court on notice for entry of judgment voiding the regulation for vagueness.

If the regulation is revised any of the plaintiffs may promptly thereafter apply to the Department of Banking for a declaratory ruling with respect to the applicability of such revised regulations to any specified state of facts involving its operations. *N. J. S. A.* 52:14B-8. In such case the department is directed to conduct a hearing to verify the facts upon which such ruling is requested, and shall make appropriate findings of fact supporting the declaratory ruling.

Upon the revision of the regulation as aforesaid, or the entry of a declaratory ruling by the Department of Banking, any party may within 30 days apply, on notice, directly to this Court for review of the validity of the regulation as revised or the correctness of any declaratory ruling made as aforesaid. The Court retains jurisdiction of the matter for such purposes.

The judgment of the Appellate Division is modified in accordance with this opinion. No costs.

*For modification* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and SCHREIBER and Judge CONFORD — 6.